UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

**ALFONSO HARRELL**

           Plaintiff,

-against-                                                                                    **COMPLAINT AND**
                                                      **JURY TRIAL DEMAND**

**CITY OF NEW YORK; DETECTIVE ROBERT**
**DEWHURST; DETECTIVE SYLVIA BONE;**
**DETECTIVE HONORA; ASSISTANT DISTRICT**
**ATTORNEY NICOLE ITKIN.**

----------------------------------------------------------X

       **NOW COMES** Plaintiff, **ALFONSO HARRELL**, by and through his attorney

**BONJEAN LAW GROUP, PLLC,** and for cause of action against the defendants, both jointly

and severally, respectfully states as follows:

<u>**INTRODUCTION**</u>

       1.      On August 25, 1993, at roughly 12:45 a.m., an unidentified male ("John Doe")

was discovered fatally shot on a park bench inside St. Johns playground, between Troy and

Schenectady Ave. off of St. Mark's Pl ace in Brooklyn, New York.

       2.      On March 10, 2010, Alfonso Harrell was arrested by defendants DEWHURST

and BONE of the New York City Police Department's "Cold Case Squad" in Landsdowne, PA.

Defendants DEWHURST and BONE did not have an arrest warrant for Plaintiff and did not

have probable cause to believe that Plaintiff had committed the murder of the "John Doe" on

August 25, 1993. Plaintiff did not give Defendants DEWHURST and BONE his consent to be

arrested, detained, or transported to New York by Defendants.

       3.      In violation of extradition laws and treaties, Defendants DEWHURST and BONE

kidnapped Plaintiff and drove him to the Brooklyn District Attorney's office where he was later

arrested and charged for the murder of the John Doe. No probable cause existed to support the arrest.

4.     Plaintiff was charged with murder of the "John Doe." Defendants purposefully, maliciously, and with reckless disregard for the truth concealed exculpatory evidence that revealed that Plaintiff was not responsible for the murder of the "John Doe."

5.     In the middle of Plaintiff's murder trial, the trial judge independently discovered that the State's key witness, Miguel Ortiz, was a cooperating witness and confidential informant for the Government. That information had never been communicated to defense counsel.

6.     Upon the discovery by the trial judge that the State's key witness was a professional "snitch," Defendant ITKIN produced a letter to defense counsel written by Ortiz in 2004 and directed to the Brooklyn DA in which he touted his confidential informant talents and offered his service to help the DA "get anybody."

7.     The following day, Defendant ITKIN dismissed all charges against Plaintiff.

**PARTIES**

8.     Plaintiff is an adult resident of Landsdowne, Pennsylvania,

9.     Defendant CITY OF NEW YORK, NEW YORK ("CITY"), is a municipality chartered by the State of New York and as such is a political subdivision of the State of New York and among its other functions operates and maintains a law enforcement agency known as the New York City Police Department ("NYPD"). The City of New York is under a duty to run its policing activities in a lawful manner so as to preserve the peace of the City of New York and to preserve to its citizens the rights, privileges and immunities granted and secured to them by the constitutions and the laws of the United States and the State of New York.

10.     Defendants DEWHURST, BONE, and HONORA are and were at all times

relevant herein, officers, employees and agents of the New York City Police Department, a municipal agency of the CITY OF NEW YORK. Defendants DEWHURST and BONE are being sued individually and in their official capacities. At all times relevant herein, Defendants DEWHURST and BONE were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees, and officer of the Police Department and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the court of their duties. They were acting for and on behalf of the CITY at all times relevant herein with the power and authority vested in them as officers, agents, and employees of the Defendant CITY and incidental to the pursuit of their duties as officers, employees, and agents of the Defendant CITY.

11.     Defendant ITKIN was at all times relevant herein, an Assistant District Attorney in the Office of the District Attorney, Kings County.

## JURISDICTION AND VENUE

12.     Each and all of the acts of defendants were performed under the color and pretense of the constitutions, states, ordinances, regulations, customs, and usages of the United States of America, the State of New York, and the City of New York and under authority of their office as police officers for the City of New York, or as prosecutors serving in an investigatory or law enforcement function.

13.     The incident which give rise to this cause of action occurred within this jurisdiction within three years of the filing of this Complaint.

14.     Venue is proper in this venue pursuant to 28 U.S.C. § 1391 as all of the defendant are residence of this district and/or all of the acts or omissions which give rise to this cause of action occurred within this district.

3

15.     Jurisdiction is proper pursuant to federal question jurisdiction, 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3)(4) and 42 U.S.C. § 1983. Plaintiff further invokes the pendent and supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

16.     Plaintiff avers that Defendants do not have immunity for violating the civil rights of its citizens, including Plaintiff.

## FACTUAL ALLEGATIONS

Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

17.     On August 25, 1993, at roughly 12:45 a.m., an unidentified male ("John Doe") was discovered fatally shot on a park bench inside St. Johns playground, between Troy and Schenectady Ave. off of St. Mark's Place in Brooklyn, New York.

18.     To this day, the identity of John Doe has never been determined.

19.     The case went unsolved for 17 years. On March 19, 2010, Plaintiff was arrested by Defendants BONE and DEWHURST for the murder of John Doe in the state of Pennsylvania despite no arrest warrant having been issued for his arrest and in violation of extradition laws and treaties. Plaintiff did not consent to being detained by Defendants and no probable cause existed to justify the arrest.

20.     After spending approximately two years incarcerated at Rikers Island, Defendant ITKIN of the Brooklyn District Attorney's Office dismissed all charges against Plaintiff.

**Early Investigation**

21.     On March 2, 1994, Detective Michael Paul interviewed an individual by the name of Miguel Ortiz who claimed to be present at the shooting in St. John's playground on August

4

25, 1993. Ortiz told Detective Paul he saw two guys he knew only as Antoine and "Cato" arguing with the victim and that "Cato" took out a shotgun and shot the man two or three times.

22.      On November 10, 1999, Detective Neglia again interviewed Ortiz at Clinton Correctional Center and Ortiz claimed that he bought marijuana from the victim whose nickname was "Gully" and saw three guys he knew as Antoine, "Kato," and "T-Bone" arguing with "Gully" and that "Kato" pulled out a small shotgun and shot one shot at "Gully" that missed and that all three guys then pulled out guns and shot at "Gully." Ortiz claimed that he saw "Kato" shoot at "Gully's" head and his head "exploded."

23.      After the interview, Detective Neglia put money in Oritz's commissary account.

24.      The crime scene and ballistics reports did not corroborate Ortiz's version of the events.

25.      Nonetheless, Detective Neglia had Ortiz view a photo array. Ortiz identified Antoine, Kato, and T-Bone from the photo array.

26.      No arrests were made at that time.

27.      On January 28, 2001, Detective Barba interviewed a woman named Loretta Ryant who told Detective Barba that she was walking through St. John's Park on August 25, 1993 when she saw a male seated on a park bench surrounded by three (3) other males. One of the males who she knew as "Kato" was in possession of a shotgun. She then observed the man with the shotgun shoot the man on the bench. The male fled the scene with two other males.

28.      On that same day, Loretta purportedly viewed a photo array and identified the man she knew as "Kato" from the photo array. Loretta could not state whether "Kato" was Alfonso Harrell.

29.     On February 2, 2001, defendant Neglia attempted to interview Robert Blount at Green Haven Correctional Center about his knowledge of the shooting. Blount refused to discuss the incident with the detective.

30.     An anonymous inmate from Green Haven Correctional Center sent a letter to Detective Neglia of the 77th precinct in Brooklyn. The anonymous writer revealed that he knew that the detective had visited Robert Blount two weeks earlier at Green Haven. The writer also acknowledged that Blount had admitted to doing the shooting in St. John's Park.

31.     The investigation ceased at that point and no arrests were made.

32.     On May 30, 2004, Miguel Ortiz who was in custody for various counts of burglary and grand larceny wrote a letter to the Office of the District Attorney, Kings County offering to assist the office in acting as a confidential informant in exchange for the office's assistance in revoking his guilty plea and helping him obtain drug treatment. Mr. Ortiz wrote "Sir, I'm a good C.I. I could get you anybody you want . . ."

33.     On April 6, 2006, Detectives Andreno and O'Toole interviewed Loretta Ryant again. She once again claimed that the shooter was a person by the name of "Kato." She had no information regarding the true identify of the offender and could not provide Kato's real name. She never stated that Alfonso Harrell was Kato.

34.     On April 25, 2006, Detectives Andreno and O'Toole visited Clinton Correctional Center to interview Miguel Ortiz for a third time. Ortiz told the detectives that he witnessed the shooting in St. John's park on August 25, 1993, but this time, Ortiz recalled that "Kato" shot "Gully" but he could not recall the identity or names of the other individuals involved. Ortiz then added that a day or two later, Kato and one of the guys he was with offered him to keep his mouth shut.

35.     Ortiz was never asked to view a physical line-up of any suspects and no arrests were made at that time

36.     On May 9, 2006, Defendant Andreno reported that he found a letter in the case folder that had come from the Greenhaven Correctional Facility. The writer of the letter disclosed that an inmate by the name of Robert Blount had admitted to shooting the victim in St. John's Park in August, 1993.

37.     Again, the investigation ceased and no arrests were made.

**Cold Case Squad Investigation**

38.     On June 14, 2007, the case was reassigned to the "Cold Case Squad" and defendant BONE took over the investigation. Defendant BONE reviewed the entire case file.

39.     On September 21, 2007, defendant BONE called the Brooklyn District Attorney's office to request that the case be reviewed for assignment of prosecution.

40.     On August 13, 2009, defendant BONE and defendant HONORA interviewed Loretta Ryant who confirmed that she saw an individual who went by the nickname "Kato" shoot the victim in the head. Ryant did not view a photo array at that time, nor was she asked to view a physical line-up.

41.     On January 13, 2010, the case was assigned to defendant LITKIN for prosecution. Defendant Litkin reviewed the entire case file.

42.     On January 28, 2010, Defendants BONE and DEWHURST interviewed Ortiz at Clinton Correctional Center for the fourth time. Ortiz promised to cooperate and assist in the case.

43.     On February 8, 2010, defendant BONE conferred with defendant ITKIN in regards to the next steps to take in the case. Defendants BONE and ITKIN conferred throughout

the entire investigation both before and after Plaintiff was indicted.

44.     On February 11, 2010, defendant ITKIN informed defendant BONE that she intended to begin the indictment process of the case the following month.

45.     On March 10, 2010, defendant ITKIN presented testimony from Loretta Ryant to a Grand Jury. Ryant testified that she was in the Albany Projects on the night of shooting and that she saw three males sitting on a bench in the park. She then saw one of the guys pull out a rifle or big long gun and shoot the man on the bench. The other individuals fled. Ryant further testified that she viewed a photo array in January, 2001 (nearly 10 years previously) and that she identified the shooter as a person she knew only as "Kato" from the photo array. Ryant testified that she did not know his real name.

46.     On March 10, 2010 defendants BONE, DEWHURST, and HONORA, travelled to Green Haven Correctional Facility to transport Ortiz to the Brooklyn DA's office.

47.     On March 11, 2010, defendant ITKIN presented testimony from Miguel Ortiz to the Grand Jury

48.     With defendant ITKIN's approval and knowledge, on March 19, 2010, defendants DEWHURST and BONE traveled to Lansdowne, PA and approached Plaintiff on the street after he had dropped his daughter off at school. Plaintiff agreed to speak with the defendants and denied any involvement in the homicide of John Doe. Notwithstanding, Defendants BONE and DEWHURST at the direction of Defendant ITKIN arrested Plaintiff in Lansdowne, PA despite the fact that no arrest warrant had been obtained for his arrest and despite the fact that no probable cause existed to justify the arrest. Defendants BONE and DEWHURST transported Plaintiff to the Brooklyn DA's office without his consent where he was interviewed by defendant ITKIN.

49.     On August 12, 2010, defendant ITKIN wrote a letter to the Clinton Correctional Facility informing the facility that Ortiz "has been cooperating with the ongoing investigation into the shooting death of a person which took place on August 25, 1993. Mr. Ortiz has testified in front of the grand jury during this investigation and has promised to continue cooperating, testifying at any trial that may occur in the future."

50.     Plaintiff was indicted for the offense of murder in the second degree on April 14, 2010.  Defendant ITKIN knowingly presented false testimony to the Grand Jury and deprived the Grand Jury of information that Ortiz was a seasoned confidential information working for the Government and had offered his cooperation in the instant case. Defendant ITKIN also failed to inform the Grand Jury that Ortiz had previously received benefits for this cooperation in this case and expected further benefits for his continued cooperation as a Government witness.

51.     On April 27, 2010, an anonymous inmate at Green Haven Correctional Facility sent a letter to the Queens District Attorney's office disclosing that a fellow inmate by the name of Robert Blount had admitted to shooting the victim in St. John's Park.

52.     On June 25, 2010, Robert Blount wrote a letter to Plaintiff's attorney, Hermann Walz, admitting that he was in fact the person who committed the murder of John Doe in St. John's park on August 25, 1993 and that Plaintiff had nothing to do with the crime.

53.     On August 27, 2010, defendant BONE hand-delivered the anonymous letter from Green Haven Correctional center concerning Robert Blount directly to defendant ITKIN.

**Pre-Trial Hearing and Commencement of Trial**

54.     Loretta Ryant testified at a pre-trial hearing in Plaintiff's case and testified that the person who shot the deceased went by the nickname "Kato" but she admitted under oath that she could not identify Plaintiff as "Kato" nor could she identify the Plaintiff as the

person she saw commit the shooting.

55.     The prosecution commenced trial against Plaintiff on or around March 1, 2012. At no time prior to trial did the prosecutor tender to the defense any exculpatory material related to the State's key witness, Miguel Ortiz, including his 2004 letter to the Brooklyn District Attorney's office offering to be a Confidential Informant for the office and assuring the office that he could "get anybody"

56.     After the commencement of trial, Defendant ITKIN belatedly produced a criminal background for Ortiz and the Honorable Michael Gray, personally arranged to have Ortiz's prior case files pulled from archives so that criminal defense counsel could review the files.

57.     A review of the files revealed that Ortiz was a long-time, cooperating witness and confidential informant for the Government. Upon the Court's discovery of this information, Defendant ITKIN, produced for the first time, the 2004 letter written by Ortiz to the Brooklyn District Attorney's office.

58.     Defendant ITKIN dismissed all charges against Plaintiff the following day.

## COUNT I

## <u>FEDERAL CONSTITUTIONAL VIOLATIONS AGAINST DEFENDANTS DEWHURST, BONE, HONORA, AND ITKIN</u>

Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

59.     Defendants DEWHURST, BONE, HONERA, AND ITKIN arrested Plaintiff even though no probable cause existed to believe that he committed any crime, including the murder of John Doe on August 25, 1993.

60.     Defendants DEWHURST, BONE, HONERA, AND ITKIN ignored, and

purposefully and maliciously concealed exculpatory evidence that revealed that Plaintiff was not responsible for the murder of John Doe.

61.     Defendants DEWHURST, BONE, HONERA, AND ITKIN recklessly disregarded and concealed exculpatory evidence that revealed that Plaintiff was not responsible for the murder of John Doe and which further demonstrated that no probable cause existed to arrest, charge, and prosecute Plaintiff.

62.     Defendants DEWHURST and BONE kidnapped, falsely arrested, and falsely imprisoned Plaintiff by arresting him without an arrested and transporting him across state lines in direct violation of State extradition laws and treaties.

63.     Defendant ITKIN purposefully and knowingly presented false testimony to a grand jury and purposefully and maliciously omitted exculpatory evidence before the grand jury that later returned a true bill of indictment.

64.     The above-described actions and/or omissions were committed under the color of law and by virtue of their authority as law enforcement officers with the New York City Police Department. Detective ITKIN committed the above-described actions and/or omissions under the color of law and was acting in an investigatory function rather than a prosecutorial one. Defendant substantially deprived the Plaintiff of his clearly established rights, privileges, and immunities, guaranteed to him as a citizen of the United States in violation of 42 U.S.C. § 1983, and deprived Plaintiff of his rights guaranteed to hum under the Fourth and Eighteenth Amendments to the United States Constitution, including but not limited to:

    a.      freedom from unlawful search and seizure;

    b.      freedom from unlawful arrest and seizure of his person;

    c.      freedom from deprivation of liberty and property without due process of law;

d.      freedom from  summary punishment;

e.      freedom from arbitrary government activity which shocks the conscious of a

civilized society.

65.     As a direct and proximate result of the acts and omission of defendants

DEWHURST, BONE, HONERA, AND ITKIN Plaintiff's constitutional rights were violated and

Plaintiff was injured and sustained substantial injuries, including but not limited to emotional

injuries.

**COUNT II**

**FEDERAL CONSTITUTIONAL VIOLATIONS AGAINST THE CITY OF THE NEW**

**YORK CITY**

Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this

Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

66.     Defendant New York City is under a duty to supervise the members of the New

York City Police Department and to ensure that the policing activities of the New York City

Police Department are run in a lawful manner preserving to the citizens of New York City the

rights, privileges, and immunities guaranteed to them by the Constitutions of both the United

States of America and the State of New York.

67.     Defendant New York City permitted, encouraged, tolerated, and knowingly

acquiesced to an official pattern, practice and/or custom of its police officers violating the

constitutional rights of the public at large.

68.     Specifically, New York City and the New York City Police Department have a

permanent and well-settled practice or custom of allowing police officers, including defendants

BONE and DEWHURST, to arrest suspects without arrest warrants and transporting them across

12

state lines without first obtaining an out-of-state fugitive warrant and without obtaining the consent of the suspect in direct violation of state extradition laws and treaties. The City's well-settled practice and custom has created an atmosphere of illegal and unconstitutional behavior in deliberate indifference and reckless disregard for the welfare of the public at large, including Plaintiff.

69.     New York City and the New York City Police Department have a permanent and well-settled practice and/or custom of allowing police officers to falsely arrest and charge civilians without probable cause or failing to take measures to release charged defendants where probable cause has dissipated, creating an atmosphere of illegal and unconstitutional behavior in deliberate indifference and reckless disregard for the welfare of the public at large, including Plaintiff.

70.     Further, Defendant New York City is liable for the actions of the individual Defendants under the doctrines of agency, various liability, employer-employee relations, master-servant, respondeat superior, joint venture, contract, and as a result of their non-delegable duty to provide officers who comply with constitutions and laws of the United States of American and the State of New York.

71.     As a direct and proximate result of the foregoing policies, practices, and customs of New York City and the New York City Police Department, Plaintiff's constitutional rights were violated and Plaintiff was injured and damaged.

## COUNT III

## STATE LAW TORTS AGAINST DEFENDANTS DEWHURST, BONE, HONERA, AND ITKIN

Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this

Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

72.     The acts, omissions and conduct of Defendants DEWHURST, BONE, HONORA, and ITKIN constitutes assault, battery, false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress.

73.     As a direct and proximate result of the aforementioned acts and omissions of defendants, Plaintiff has been injured and damaged.

**COUNT IV**

**PUNITIVE DAMAGES AGAINST DEFENDANTS DEWHURST, BONE, HONORA, AND ITKIN**

Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

74.     The actions and/or omissions of defendant complained of herein were unlawful conscience shocking, and unconstitutional, and performed maliciously, recklessly, fraudulently, intentionally, willfully, wantonly, in bad faith, and in such a manner to entitle the Plaintiff to a substantial award of punitive damages against defendants.

**DAMAGES**

Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

75.     As a direct and proximate result of the aforementioned actions and omissions of the defendants, Plaintiffs was injured and damaged.  The damages for which Plaintiff seeks compensation from the defendants, both jointly and severally, include, but are not limited to, the following:

        a.     emotional pain and suffering of a past, present, and future nature;

b.      loss of enjoyment of life of a past, present, and future nature;

c.      fright, fear, aggravation, humiliation, anxiety, and emotional distress of a past, present, and future nature as a result of the injuries sustained as a result of the illegal actions of defendants.

d.      loss of earning capacity;

e.      attorney's fees pursuant to 42 U.S.C. § 1988;

f.      punitive damages against applicable defendants;

g.      pre-and post-judgment interest;

h.      declaratory judgment and injunctive relief holding that the policies, practices or customs of defendants, complained of herein are illegal and unconstitutional;

i.      preclusion of defendants Bone, Dewhurst, and Honora from serving in the capacity of law enforcement officers; and

j.      all such relief, both general and specific, to which Plaintiff may be entitled to under the premises.

### PRAYERS FOR RELIEF

Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff sues the defendants both jointly and severally, for his personal injuries and prays for a judgment against the defendants for compensatory damages solely in an amount to be determined by a jury as reasonable and for all such further relief, both general and specific, to which he may be entitled under the premises.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff sues defendants DEWHURST, BONE, HONORA, and ITKIN for punitive damages in an amount solely to be determined by a jury as reasonable and for all such further relief, both general and specific, to which he may be entitled under the premises.

76.     **A JURY IS RESPECTFULLY DEMANDED TO TRY THE ISSUES ONCE JOINED.**

Respectfully submitted,

**BONJEAN LAW GROUP, PLLC**
**1000 Dean St., Ste. 345**
**Brooklyn, New York 11238**
**(718) 875-1850**
**(718) 230-0582**

By: s/ JENNIFER BONJEAN

16